IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-02835-PAB

LISA BERNAL,

      Plaintiff,

v.

ANDREW M. SAUL,[1] Commissioner of Social Security,

      Defendant.

_____

**ORDER**
_____

      This matter comes before the Court on the Complaint [Docket No. 1] filed by

plaintiff Lisa Bernal on November 5, 2018.  Plaintiff seeks review of the final decision of

the defendant (the "Commissioner") denying her claim for disability insurance benefits

under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33.  The Court has

jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[2]

## I.  BACKGROUND

      On October 20, 2015 plaintiff applied for social security benefits under Title II of

the Act.  R. at 15.  Plaintiff alleged a disability onset date of October 28, 2014.  *Id.*

After her claims were initially denied on February 16, 2016, plaintiff requested a

_____

      [1] On June 4, 2019, Mr. Saul was confirmed as Commissioner of Social Security.
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Saul will be
substituted as defendant for Nancy A. Berryhill, former Acting Commissioner of Social
Security.

      [2] The Court has determined that it can resolve the issues presented in this
matter without the need for oral argument.

hearing before an administrative law judge ("ALJ"), which was held on October 5, 2017. *Id.*

On December 26, 2017, the ALJ issued a decision denying plaintiff's claim. R. at 12. The ALJ found that plaintiff had not engaged in substantial gainful activity since the application date and had the following severe impairments: peripheral neuropathy; diabetes mellitus; fibromyalgia; and osteoarthritis of the bilateral knees. R. at 18. The ALJ also found that plaintiff had nonsevere affective disorder. *Id.* The ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, or 416.926. R. at 19. Ultimately, the ALJ concluded that plaintiff had the residual functional capacity ("RFC") to perform light work with the following qualifications:

> the claimant can occasionally stoop, kneel, crouch, and crawl; the claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; the claimant cannot be exposed to unprotected heights; during an eight-hour workday, the claimant can sit for a total of six hours, stand and/or walk for a combined total of six hours; the claimant can occasionally reach, handle, finger, and feel with either upper extremity; the claimant can be expected to be absent from work one day per month to manage her medical issues; the claimant can tolerate occasional exposure to extreme temperatures; the claimant is limited to performing simple and routine work (based upon pain and side effects from medication); and the claimant can have frequent contact with supervisors, coworkers, and the public.

R. at 20. The ALJ determined that plaintiff was unable to perform any past relevant work, R. at 24, but found that jobs existed in significant numbers in the national economy that plaintiff could perform. R. at 25.

On September 1, 2018, the Appeals Council denied plaintiff's request for review

of the ALJ's decision.  R. at 1.  Accordingly, the ALJ's decision is the final decision of the Commissioner.

## II. STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV.  DISCUSSION

Plaintiff raises two objections to the ALJ's order: (1) the ALJ failed to give controlling weight to Dr. Benjamin Kirkley, plaintiff's treating physician and (2) the ALJ improperly rejected portions of Dr. Kirkley's opinion while accepting others. The Court addresses each in turn.

### A.  Controlling Weight

The Tenth Circuit's "case law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). In the first step, the ALJ must consider whether the treating physician's opinion is entitled to controlling weight. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory

5

diagnostic techniques and is not inconsistent with the other substantial evidence in

[the] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2);

*see also* SSR 96-2p, 1996 WL 374188, *1 (July 2, 1996).

If the opinion is not given controlling weight, the ALJ will proceed to the second

step of the inquiry.[3]  In the second step, "[t]reating source medical opinions are still

entitled to deference and must be weighed using all of the factors provided in 20 CFR

[§§] 404.1527 and 416.927.  In many cases, a treating source's medical opinion will be

entitled to the greatest weight and should be adopted, even if it does not meet the test

for controlling weight."  SSR 96-2p, 1996 WL 374188, *4.  The factors that must be

applied in determining what weight to give an opinion are:

> (1) the length of the treatment relationship and the frequency of
> examination; (2) the nature and extent of the treatment relationship,
> including the treatment provided and the kind of examination or testing
> performed; (3) the degree to which the physician's opinion is supported by
> relevant evidence; (4) consistency between the opinion and the record as
> a whole; (5) whether or not the physician is a specialist in the area upon
> which an opinion is rendered; and (6) other factors brought to the ALJ's
> attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quoting *Watkins v.*

*Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)); *see also* 20 C.F.R. § 404.1527(c).

"[A]n ALJ must give good reasons for the weight assigned to a treating physician's

opinion, that are sufficiently specific to make clear to any subsequent reviewers the

weight the adjudicator gave to the treating source's medical opinion and the reason for

that weight."  *Langley*, 373 F.3d at 1119 (quotations and alterations omitted).  While a

---

[3] Plaintiff only contests the ALJ's application of the first step of the analysis.  *See* Docket No. 15 at 20.

failure to provide sufficiently specific, legitimate reasons tied to the factors for the weight given to a treating physician's opinion warrants reversal, *Watkins*, 350 F.3d at 1300-01, an ALJ is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Instead, an ALJ need only give "good reasons" for according less weight to the treating source opinions, such as by citing to "contrary, well-supported medical evidence" in the record." *Id.*

After examining the medical record, the ALJ gave great weight to Dr. Kirkley's assessment that plaintiff could lift and carry twenty pounds frequently, and rarely carry fifty pounds. R. at 24. The ALJ gave less weight to Dr. Kirkely's conclusion that plaintiff can never crouch, squat, bend, or climb stairs, and gave some weight to Dr. Kirkley's assessment that plaintiff can use her hands and fingers 25% of the time and reach 50% of the time. *Id.* Finally, the ALJ determined that Dr. Kirkley's conclusion that plaintiff could sit for a total of less than two hours, stand or walk for a total of less than two hours, must take ten minute breaks every hour, would be off task for 25% of the day, and is likely to miss more than four days of work per month was "not supported by the objective medical evidence or the considerable activities of daily living discussed above." *Id.*

The Court finds that there is substantial evidence for the ALJ's decision to not give Dr. Kirkley's functional limitations controlling weight. For example, a November 5, 2014 medical report shows that plaintiff had normal coordination and gait, as well as "no clubbing of fingers" and "normal range of motion." R. at 496. On February 22,

2015, plaintiff alerted her physician that she had joint pain and numbness in her feet, but still maintained intact motor function.  R at 340.  By May 11, 2015, plaintiff's then-treating physician was reporting success with plaintiff's management.  R. at 449. Plaintiff's medical documents report similar conditions throughout 2016 and 2017.  *See, e.g.*, R. at 592 (normal gait and station); R. at 603 (strength at 4 of 5 in lower extremities); R. at 777 (no assistance with activities of daily living); R. at 939 (normal motor strength and tone); R. at 962 (no exercise intolerance and normal tone and motor strength).  Indeed, even when plaintiff was diagnosed with fibromyalgia on June 7, 2016, her physical examination showed normal gait and station, and her finger and nose motion intact.  R. at 592.

Importantly, Dr. Kirkley's own treatment notes do not suggest the severe limitations he recommended.  August 28, 2015 treatment records from Dr. Kirkley state that plaintiff was not in "acute distress" and that her motion was intact.  R at 476.  Dr. Kirkley recommended low-impact exercise, such as swimming.  *Id.*  A December 21, 2015 examination by Dr. Kirkley reports that plaintiff had normal range of motion, five out of five motor strength, and normal coordination.  R. at 472.  Dr. Kirkley's treatment records from March 3, 2016 state that plaintiff had full range of motion, five out of five motor strength, and had no acute distress.  R. at 518.  On the same day that Dr. Kirkley completed the medical source statement, he examined plaintiff and reported that plaintiff's arms, legs, and back were tender to touch, but otherwise reported no other musculoskeletal issues.  R. at 856.  As a result of plaintiff's medical records, including Dr. Kirkley's own treatment records, consistently showing that she had normal range of

motion, strength, and gait, the Court finds that there is substantial evidence for the ALJ's decision to not give controlling weight to Dr. Kirkley's functional limitations.

Plaintiff argues that the record shows that "Ms. Bernal had arthritis in her knees, the cervical portion of her spine, the thoracic portion of her spine and the lumbar portion of her spine" as well as "severe impairment of her lungs."  Docket No. 15 at 18-19.  Essentially, plaintiff asks the Court to reweigh the evidence before the ALJ. However, the Court "ha[s] no authority to reweigh" the evidence, *Terwilliger v. Comm'r*, 801 F. App'x 614, 619 (10th Cir. 2020) (unpublished), and must only analyze the record to determine whether there is "substantial evidence showing that the ALJ was justified in her decision."  *See Ellison*, 929 F.2d at 536.  As demonstrated above, there is substantial evidence for the ALJ's decision to not give Dr. Kirkley's functional limitations controlling weight.

### B.  Improper Consideration of Some of Dr. Kirkley's Opinions

Plaintiff next argues that the ALJ improperly utilized some of Dr. Kirkley's opinions while discounting others.  Docket No. 15 at 20.  Specifically, plaintiff argues that the ALJ failed to explain why some of Dr. Kirkley's opinions were given great weight and others were given little weight and thus the ALJ's decision does not comport with the Tenth Circuit's decision in *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).  *Id.*

In *Haga*, the Tenth Circuit held that an ALJ may not "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."  *Haga*, 482 F.3d at 1208.  There, ALJ adopted and incorporated several

9

opinions of a medical expert into the claimant's RFC. *Id.* at 1207. However, the ALJ "inexplicably reject[ed] the other four restrictions" of the medical expert. *Id.* The Tenth Circuit remanded and required the ALJ to explain the reasons why the four other restrictions were rejected.

*Haga* is distinguishable for two reasons. First, the ALJ in *Haga* completely rejected some of the medical expert's opinions while appearing to fully adopt others. *Id.* at 1208. ("[T]he ALJ should have explained why he rejected four of the moderate restrictions . . . while appearing to adopt the others."). Here, the ALJ did not fully adopt any of Dr. Kirkley's opinions, but afforded them different levels of weight based on the evidence in the record. R. at 24. Second, in *Haga*, the ALJ provided no explanation for why the medical opinion was being rejected. 482 F.3d at 1208. Here, after examining the evidence in the record demonstrating that plaintiff's limitations were not as severe as alleged, the ALJ determined that Dr. Kirkley's functional limitations "are not supported by the objective medical evidence or the considerable activities of daily living discussed above." R. at 24. The ALJ thus gave "good reasons" for discounting the functional limitations by citing "contrary, well-supported medical evidence" in the record. *Oldham*, 509 F.3d at 1258.

As a result, the Court finds that the ALJ did not impermissibly pick and choose medical opinions favorable to a finding of disability.

## V. CONCLUSION

For these reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is

**AFFIRMED**.  It is further

**ORDERED** that this case is closed.

DATED June 1, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge